IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAMILLE CAMPBELL,

               Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

               Defendant.

CIVIL ACTION
NO. 17-1714

## OPINION

**Slomsky, J.**                                                                 **July 25, 2018**

## I.    INTRODUCTION

Before the Court are the Objections of Plaintiff Camille Campbell to the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas J. Rueter.  (Doc. No. 15.) On April 13, 2017, Plaintiff filed a Complaint against Defendant Commissioner of the Social Security Administration alleging that Defendant wrongfully denied Plaintiff disability insurance benefits (DIB) under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434.  (Doc. No. 1.)  On September 20, 2017, the Court referred the case to Magistrate Judge Rueter for an R&R.  (Doc. No. 13.)   On December 7, 2017, Magistrate Judge Rueter issued the R&R, recommending that Plaintiff's request for review be denied.  (Doc. No. 14.)  On December 20, 2017, Plaintiff timely filed Objections.  (Doc. No. 15.)  On December 29, 2017, Defendant filed a Response to Plaintiff's Objections.  (Doc. No. 17.)  The Objections are now ripe for a decision.

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the portions of the R&R to which objections have been made.  After independently reviewing the

Administrative Record ("Record") and for reasons that follow, the Court will approve and adopt the R&R (Doc. No. 14) in its entirety.

## II.     BACKGROUND

### A. Factual and Procedural Background

Plaintiff Camille Campbell filed an application for DIB alleging disability beginning on October 22, 2012. (R. at 101-07.) The claim was denied initially and a request for a hearing was filed timely. (R. at 40-49, 53-58.) A hearing was held on August 26, 2015, before Administrative Law Judge (ALJ) George C. Yatron. (R. at 27-39.) Plaintiff, represented by counsel, appeared and testified. Agnes Klosinski Gallen, a vocational expert (VE), also appeared and testified. In a decision dated September 22, 2015, the ALJ found that Plaintiff was not disabled under the Act. (R. at 11-26.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since October 22, 2012, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairment: fibromyalgia (20 CFR 404.1520(c)).

4. The claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that she is able to lift/carry up to 10 pounds; stand and walk about 2 hours during an 8-hour workday; and sit about 6 hours during an 8-hour workday.

6. The claimant is capable of performing past relevant work as a hospital admitting clerk, department administrator and administrative manager.

   This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 22, 2012, through the date of this decision (20 CFR 404.1520(f)).

(R. at 16-23.)

Plaintiff filed a request for review of the decision of the ALJ. (R at 1-10.) That request was denied and the ALJ's decision became the final decision of the Commissioner. (Id.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## B. Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If she does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, she is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix

3

1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

§ 404.1520(a)(4)(i)-(v).

Between the third and fourth steps, the Social Security Administration assesses a claimant's residual functional capacity, which is "the most [a claimant] can do despite [her] limitations." § 404.1545(a)(1). The Social Security Administration uses the residual functional capacity (RFC) assessment at Step Four to determine if the claimant is able to do her "past relevant work." § 404.1545(a)(5)(i). "Past relevant work" is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." § 404.1560(b)(1).

## C. The ALJ's Decision

At the administrative hearing on August 26, 2015, Plaintiff testified that she was forty-nine years old and unmarried with a grown child who was twenty-seven years old at the time. (R. at 29-30.) Plaintiff represented that she is a college graduate who owns a home and lives alone. (R. at 30-31.) Plaintiff also stated that she had been staying in New York with her mother "for the last several months." (R. at 31.) Plaintiff mentioned that she has a driver's license and drove herself to the administrative hearing from New York, a distance of 100 miles. (R. at 30-31.)

Plaintiff last worked in October 2012 as an administrative assistant. (R. at 31.) She ceased work because "it became too much for . . . [her] to manage in terms of the effects on . . . [her] health." (Id.) According to Plaintiff, she can no longer work because of pain in her joints and muscles and consistent, extreme fatigue. (R. at 33.) Plaintiff experiences post-exertion fatigue, such that simple activities result in pain. (Id.) Plaintiff explained that she would be in bed for the next day or two due to fatigue as a result of her drive from New York that morning. (Id.)

With respect to her daily activities, Plaintiff stated that she does not engage in sports or exercise, but reads as a hobby. (R. at 32.) When asked whether she engages in social activities or visits friends, Plaintiff mentioned that she goes to church. (Id.) Plaintiff stated that she can no longer perform yard work or house work. (Id.) Plaintiff grocery shops and "sometimes" watches television. (R. at 32-33.) When asked what time she arises in the morning, Plaintiff responded that she does "not get up in the morning. [She gets] up in the afternoon at about—between the hours of maybe 3:30 to 6:30." (R. at 33.) Plaintiff does not smoke or drink alcoholic beverages. (Id.) Plaintiff takes Duloxetine for pain, but explained that her doctor was weaning her off that medication because it caused hair loss. (R. at 33-34.)

The VE classified Plaintiff's past work as an admitting assistant at a hospital as sedentary, semi-skilled work. (R. at 34.) Plaintiff's past work as a department administrator in higher education was classified as a sedentary, skilled job, as was her past work as an administrative manager. (Id.) The ALJ asked the VE to consider a forty-nine-year-old individual with Plaintiff's training, education and experience and who is able to lift a maximum of twenty pounds, stand and walk a total of six hours throughout an eight-hour workday, and sit for six or more hours throughout an eight-hour workday. (R. at 34-35.) The VE opined that the

hypothetical individual could perform Plaintiff's past work as an admitting clerk and each of the managerial positions. (R. at 35.)

The ALJ also asked the VE to consider the same hypothetical individual, but who is limited to lifting up to ten pounds, and who can stand and walk only two hours in an eight-hour workday. (Id.) The VE opined that such hypothetical individual could perform Plaintiff's past work as defined in the Dictionary of Occupational Titles (DOT), but not as performed by Plaintiff because Plaintiff represented that, at times, she was required to lift files weighing up to fifty pounds. (Id.) The VE also opined, in the alternative, that the hypothetical individual could perform several types of unskilled work, such as: order clerk (for which there are approximately 350 jobs in the regional economy and 107,000 in the national economy); and document prep (for which there are approximately 350 jobs in the regional economy and 174,000 in the national economy). (R. at 35-36.) The VE mentioned that her testimony was consistent with the DOT. (R. at 36.)

In response to questioning by Plaintiff's attorney, the VE indicated that an employee who is off task greater than twenty percent of a workday would not be able to maintain employment. (Id.) In addition, the VE reasoned that an employee could miss one workday each month and maintain employment, but if an employee missed more than one workday each month, such employment eventually would be terminated. (R. at 37.)

The ALJ found that the evidence of record supports a finding that Plaintiff has fibromyalgia, a severe impairment, but which does not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) Ultimately, the ALJ concluded that Plaintiff retains the RFC to perform light work as set forth in his decision. (See R. at 17.)

## III.    STANDARD OF REVIEW

When reviewing a final decision of the Commissioner of Social Security, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1).[1] An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003). Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as his finding of fact. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

_____

[1]    Section 405(b)(1) provides in relevant part:

The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based. . . .

42 U.S.C. § 405(b)(1).

## IV.    ANALYSIS

Plaintiff contends that substantial evidence does not support the ALJ's decision to deny her claim for DIB.    Specifically, Plaintiff argues that the credibility determination is not supported by substantial evidence, the ALJ improperly weighed the opinion evidence, and the hypothetical question posed to the VE was legally insufficient.    (Doc. No. 15.)    Defendant maintains that substantial evidence supports the decision of the ALJ.    (Doc. No. 17.)    The Court will discuss each Objection in turn.

### A.    The Magistrate Judge Properly Concluded that Substantial Evidence Supports the ALJ's Credibility Determination

First, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's credibility determination, which Plaintiff claims was erroneous.    (Doc. No. 15 at 2.) The Court disagrees.

Social Security Ruling (SSR) 12-2p explains that fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least [three] months."    Titles II & XVI: Evaluation of Fibromyalgia, SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).    "There is no question that fibromyalgia, an elusive problem, poses special circumstances in the social security arena.    In evaluating fibromyalgia, courts acknowledge that symptoms of the disease are entirely subjective and medical testing may not be able to assess its severity."    Wiant v. Colvin, No. 15-90, 2016 WL 3261881, at *3 (W.D. Pa. June 14, 2016); see Wilson v. Apfel, No. Civ. A. 98-6511, 1999 WL 993723, at *1 n.1 (E.D. Pa. Oct. 29, 1999) (symptoms of fibromyalgia are subjective), aff'd, 225 F.3d 651 (3d Cir. 2000).

SSR 12-2p explains how the Commissioner develops evidence to establish that a claimant has a medically determinable impairment of fibromyalgia, and how fibromyalgia is evaluated in

disability claims.  See 2012 WL 3104869, at *1.  Importantly, SSR 12-2p provides guidance on how the Commissioner evaluates a claimant's statements about her symptoms and functional limitations resulting from fibromyalgia.  Id. at *5.  SSR 12-2p directs an ALJ to evaluate a claimant's credibility in accordance with the Commissioner's regulations, specifically, 20 C.F.R. § 404.1529.  See id.

The regulations state that the Commissioner will consider all of a claimant's symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529.  The Commissioner also will consider statements or reports from the claimant, a treating or nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how the impairment and any related symptoms affect the claimant's ability to work.  Id.

SSR 12-2p further directs that an ALJ must evaluate a claimant's credibility in accordance with SSR 96-7p.  2012 WL 3104869, at *5.  SSR 96-7p details a two-step process for evaluating credibility.  See Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186 (July 2, 1996).  First, the Commissioner determines whether there are medical signs and findings that show the person has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged.  Id. at *2.  Second, the Commissioner must evaluate the intensity and persistence of the claimant's pain or any other symptoms and determine the extent to which the symptoms limit the claimant's capacity for work.  Id.

SSR 96-7p provides that when a claimant's subjective complaints are not substantiated by objective medical evidence, the adjudicator must make a credibility finding based on a

consideration of "the entire case record." Id. The ALJ must consider the degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment, and the consistency of the claimant's own statements. Id. at *5. SSR 96-7p acknowledges that symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques; however, their effects often can be clinically observed. Id. at *6.

Moreover, the regulations at 20 C.F.R. § 404.1529(c)(2) provide that objective medical evidence "is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of" an individual's symptoms and the effects those symptoms may have on the individual's ability to function. Id. Pursuant to SSR 96-7p, the reasons for the ALJ's credibility finding must be articulated in his decision. Id. at *4. SSR 12-2p reaffirms that

> [i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

2012 WL 3104869, at *5. SSR 12-2p also reiterates that, as discussed in SSR 96-7p, the Commissioner will make a finding about the credibility of the person's statements regarding the effects of her symptoms on functioning.

Here, the evidence of record demonstrates that Plaintiff has been diagnosed with, and treated for, fibromyalgia. Further, in the sequential analysis, the ALJ determined that fibromyalgia is a severe impairment and recognized it as a medically determinable impairment in Plaintiff's case. (See R. at 18.) But the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible. (R. at 18, 21.)

In reaching this conclusion, the ALJ considered Plaintiff's testimony at the administrative hearing, her description of daily activities as detailed in a function report, the medical records and the medical opinions. (See R. at 17-21.) The ALJ ultimately concluded:

> While the record supports some of claimant's complaints, there are no findings to support any totally disabling allegations. The extent of her reported daily activities is not indicative of total disability. The medical evidence documents some limitations due to claimant's impairments, but few significant findings (see discussion above). Therefore, the undersigned does not fully credit claimant's allegations of total disability and only partially credits this testimony. The clinical findings, including physical examinations, have been unremarkable (normal strength, sensation, etc.) except for some tender points and tenderness noted intermittently. The signs, symptoms, and laboratory findings reflect that there has been improvement in the claimant's symptoms, thus reducing the resultant limitations in the claimant's functioning. The claimant alleges side effects of vision loss but the medical evidence does not establish by objective medical evidence that vision loss exists to the extent that would result in debilitating limitations. Moreover, the fact that the claimant is able to drive extended distances runs counter to this allegation.

(R. at 21.)

Plaintiff argues that the Magistrate Judge erred in the R&R because like the ALJ's decision, the R&R "relies upon 'objective findings' which are not relevant under 12-2p, and ignores abnormal objective findings."[2] (Doc. No. 15 at 5.) This argument is without merit because the ALJ's decision complies with the guidelines set forth in the regulations, SSR 96-7p and SSR 12-2p.

"Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so." Nocks v. Astrue, 626 F. Supp. 2d 431, 446 (D. Del. 2009) (citing Prokopick v. Comm'r of Soc. Sec., 272 F. App'x 196, 199 (3d Cir. 2008). The ALJ should reject claims of subjective complaints if he does not find them credible. See

_____

[2] Some test results yielded abnormal results. (See, e.g., R at 184, 187, 191, 193-95.)

Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999)).  The reviewing court

should "ordinarily defer to an ALJ's credibility determination."  Reefer v. Barnhart, 326 F.3d

376, 380 (3d Cir. 2003).

The ALJ's decision satisfies the above standards.  The ALJ made a finding about

Plaintiff's credibility by considering the evidence in the case record, including the Plaintiff's

daily activities, medication and treatment records, which demonstrated some benign findings and

improvement of symptoms.  For example, the ALJ summarized the most recent treatment notes

as follows:

> An October, 2014 progress note from Dr. Durback references that the claimant's "main complaint is still a [sic] chronic fatigue."  The doctor referenced a sleep study on September 30, 2014 that did not show sleep apnea.  The claimant's laboratory tests did not show signs of a connective tissue disease or inflammatory arthritis or other cause of her excessive fatigue complaints.  The assessment was fibromyalgia, chronic fatigue syndrome.  The claimant was started on Cymbalta, which was never tried before for fibromyalgia.  Possibly starting on Provigil or Nuvigil for excessive sleepiness was discussed (Exhibit 5F11-12).

> A December, 2014 treatment note from Dr. Bruce Solitar references complaint of fatigue and sleep disorder, but denial of fever, chills, sweats, anorexia, weakness, malaise and weight loss.  The claimant complained of muscle weakness and muscle aches but denied muscle cramps, joint [pain], joint swelling, presence of joint fluid, back pain, stiffness, arthritis, and loss of strength.  Physical examination revealed full range of motion in all joints without synovitis, nontender back with good range of motion, and no muscle tenderness.  Normal concentration and attention span were noted (Exhibit 8F).

> A May, 2015 treatment note from Dr. Solitar references continuing complaint of pain, diffuse muscular pain, which was severe over the winter but improved somewhat; fatigue, frequent migraine headaches.  Musculoskeletal examination revealed full range of motion in all joints without synovitis, non-tender back with good range of motion and no muscle tenderness.  Cymbalta was increased to 90 mg daily (Exhibit 8F).

> A July, 2015 treatment note from Dr. Solitar references complaint of hair loss worsened with the increase of Cymbalta to 90 mg daily, and improvement with decreased dosage to 60 mg, but the loss persists.  She reported much better pain response on higher dose of Cymbalta, but no relief from Nabumetone.  Side effects of higher dose of Cymbalta were "somewhat shaky and off-balance" (Exhibit 8F).

(R. at 19.)  This recitation of the evidence supports the ALJ's credibility analysis, in which he found that improvements in Plaintiff's symptoms reduced resulting limitations in her functioning.  (See R. at 21.)

Plaintiff also argues that the Magistrate Judge erred by accepting the ALJ's "insufficient and mischaracterized summary of Plaintiff's daily activities."  (Doc. No. 15 at 5.)  Plaintiff argues that contrary to what the R&R found, Plaintiff's daily activities suggest that she is not able to sustain work at any level of exertion on a regular and consistent basis.  (Id. (citing SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)).)  Plaintiff argues that her testimony and documentary evidence do not support the ALJ's conclusion, with which the Magistrate Judge agreed.

In making this argument, Plaintiff essentially asks the Court to reweigh the evidence and reach a different conclusion.  A reviewing court, however, may not set the Commissioner's decision aside if it is supported by substantial evidence, even if the court would have decided the factual inquiry differently.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.")

Regardless, the ALJ's credibility finding merits deference.  The decision demonstrates that the ALJ questioned the sincerity of Plaintiff's statements concerning the intensity, duration and limiting effects of her symptoms for several reasons.  He considered Plaintiff's subjective complaints in light of the medical evidence.  He also considered Plaintiff's activities of daily living, testimony and all other evidence of record.  The ALJ concluded that Plaintiff's condition

was not severe enough to prevent her from performing light work. This analysis satisfied the ALJ's obligation to explain why he determined that Plaintiff's impairments were not as limiting as Plaintiff claimed at the administrative hearing. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000); Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990); see also Kanakis v. Comm'r of Soc. Sec., 649 F. App'x 288, 293 (3d Cir. 2016) (finding that substantial evidence supported the ALJ's credibility determination because the ALJ provided a basis with support in the record for rejecting the claimant's testimony as incredible).

For these reasons, the Magistrate Judge was correct in concluding that the ALJ sufficiently explained his reasons for finding Plaintiff capable of performing a limited range of light work, and that the ALJ's conclusion is supported by substantial evidence. Therefore, Plaintiff's first Objection is without merit.

### B.    The ALJ Properly Weighed the Opinion Evidence

Next, Plaintiff objects to the Magistrate Judge's finding that the ALJ properly weighed the opinions of the treating physicians. (Doc. No. 9 at 13.) She argues that the ALJ's finding is not supported by substantial evidence. (Id.) The Court disagrees.

An ALJ shall "accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). An ALJ shall give a treating physician's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot

reject evidence for no reason or for the wrong reason. Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at 429).

A treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if it is unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). An ALJ may not reject a treating physician's opinion on the basis of his own credibility judgments, speculation or lay opinion. Morales, 225 F.3d at 317. Nevertheless, according to the Commissioner's regulations, "a statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1). "[A] statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue." Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994) (citing Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990)); see also Brown v. Astrue, 649 F.3d 193, 196 n.2 (3d Cir. 2011) ("The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."); Breen v. Comm'r of Soc. Sec., 504 F. App'x 96, 99 n.3 (3d Cir. 2012) ("While treating medical source opinions may be afforded controlling weight on issues such as the nature and severity of a claimant's impairment, 20 C.F.R. § 404.1527(c)(2), opinions on issues reserved to the Commissioner—i.e., a claimant's residual functional capacity—are not entitled to 'any special significance' regardless of the source of the opinion, id. (d)(2)-(3).").

The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) in that she is able to lift and carry up to ten pounds, stand and walk about two hours during an eight-hour workday and sit about six hours during an eight-hour workday. (R. at 17.)

In reaching this conclusion, the ALJ offered a detailed assessment of the opinion evidence of record. (See R. at 19-21.)

The ALJ gave little weight to the August 12, 2015 opinion of Bruce Solitar, M.D., Plaintiff's treating rheumatologist. (R. at 20.) Plaintiff takes issue with this conclusion. (Doc. No. 15 at 13.) She states that "Dr. Solitar's assessment, because it included limitations due to the Plaintiff's pain and fatigue, would necessarily have led to a finding of disability." (Id.)

In considering Dr. Solitar's opinion, the ALJ noted the length of the treatment relationship. (R. at 20.) Dr. Solitar represented that he had treated Plaintiff every two to three months since July 2014. (Id.) The ALJ acknowledged that Dr. Solitar's diagnosis of fibromyalgia was based on clinical findings including fatigue, depression, poor sleep, constipation, poor concentration, muscle tenderness, nausea and diarrhea. (Id.) Plaintiff's primary symptoms were identified as pain, fatigue and cognitive difficulties. (Id.) The ALJ summarized Dr. Solitar's opinion as follows:

> The doctor opined that the claimant could sit for two hours during an eight-hour workday; stand/walk for one hour each during an eight-hour workday; however, she must alternate between sitting and standing/walking every 30 minutes for [a] period of 30 minutes each time. The doctor further opined that the claimant could lift up to ten pounds occasionally and has some manipulative limitations. In addition, Dr. Solitar assessed that the claimant's pain constantly interferes with her attention and concentration, and that she is incapable of even low stress jobs.
>
> She would require frequent breaks, and would be absent more than three times per month from work due to symptoms of her impairments or treatment (Exhibit 6F).

(Id.)

The ALJ attributed "little weight" to Dr. Solitar's assessment because he believed it overestimated Plaintiff's limitations that are "not supported by the objective medical evidence." (Id.) The ALJ also found that the opinion is not supported by Plaintiff's activities of daily living. (Id.) He cited specific activities, including "the ability to drive 100 miles to New York from

Pennsylvania, shopping, caring for a pet, cooking, and cleaning on some days."  (Id.)  The ALJ acknowledged that Plaintiff testified to experiencing post-exertional fatigue but noted that such is not reported to her doctor in the treatment notes.  (Id.)

The ALJ also gave "little weight" to both the January 16, 2014 opinion of Dale Weisman, M.D., a consulting physician, and the June 24, 2013, letter of Charlie Seltzer, M.D., of Garabedian Medical Clinic.  (Id. at 21, 205-20.)  Plaintiff takes issue with these conclusions as well.

Dr. Weisman opined that Plaintiff could perform sedentary level work.  (Id.; see also R. at 205-20.)  In affording "little weight" to this opinion, the ALJ reasoned that the opinion is "an overestimate of the claimant's restrictions and limitations based only on a snapshot of her functioning and is not supported by the objective medical evidence or the record as a whole." (R. at 21.)

Dr. Seltzer opined that "it is very difficult to estimate when . . . [Plaintiff] will be able to return to work . . . .  However, I don't foresee her being able to work any time in the near future" and that "I doubt that she will be able to work a full week or even a full day when she can return to work.  Again though, this may change given her response to treatment."  (Id.)  In affording "little weight" to this opinion, the ALJ correctly reasoned in accordance with the case law of the Third Circuit that

> [s]tatements that a claimant is "disabled" are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Social Security Regulations and legal standards.  Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability.  Opinions on issues reserved to the Commissioner, such as those of Dr. Seltzer can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive [evidence].

(Id.)

The ALJ concluded, therefore, that Dr. Seltzer's opinion "is an overestimation of the claimant's restrictions and limitations," reasoning that the opinion "is not consistent with or supported by the objective medical evidence." (Id.) The ALJ specifically relied on the medical evidence in Exhibit 7F, which demonstrated "full range of motion, without pain in the fingers, wrists, elbows and shoulder, normal strength in the arms and legs, and the ability to drive long distances referenced" in Plaintiff's testimony. (Id.)

A review of the ALJ's decision shows that he considered all the evidence, noted the lack of support for the opinion evidence, and explained his reasons for weighing the evidence as he did. (See R. at 19-21.) The regulations require the ALJ to give medical opinions the weight he deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ provided a detailed examination of the medical evidence of record and considered the treatment notes of Plaintiff's treating providers in light of the opinion evidence and Plaintiff's subjective complaints. The ALJ determined that the opinions of Drs. Solitar, Weisman and Seltzer were contradicted by other medical evidence in the record, including medical findings and Plaintiff's daily activities. The ALJ may attribute less weight to a medical opinion that is contradicted by other evidence in the record. See Plummer, 186 F.3d at 429; Newhouse, 753 F.2d at 286.

Again, Plaintiff essentially seeks to have this court reweigh the evidence and come to a different conclusion. However, a reviewing court may not set the Commissioner's decision aside

if it is supported by substantial evidence, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").

For these reasons, the Magistrate Judge was correct in concluding that the ALJ properly weighed the opinions of the treating physicians. Therefore, Plaintiff's second Objection is without merit.

### C. The Hypothetical Question Posed to the VE Was Legally Sufficient

Last, Plaintiff objects to the Magistrate Judge's finding that the ALJ's questions to the VE were legally sufficient. (Doc. No. 15 at 10.) She also argues that the ALJ erred in rejecting limitations opined by treating and examining physicians. (Id. at 10-11.) The Court disagrees.

It is well established that the ALJ must include in the hypothetical to the VE all of a claimant's limitations that are supported by the medical record. Plummer, 186 F.3d at 431; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). But an ALJ need not "submit to the [VE] every impairment alleged by a claimant." Zirnsak v. Colvin, 777 F.3d 607, 615 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)). An ALJ is only required to submit credibly established limitations. Id. If a limitation "is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." Id. A VE's testimony in response to a hypothetical "that fairly set[s] forth every credible limitation established by the physical evidence" may be relied on by the ALJ as substantial evidence. Plummer, 186 F.3d at 431.

The Third Circuit has explained that "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8. The court stated:

> That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like Rutherford's here) are really best understood as challenges to the RFC assessment itself.

Id.

Here, the ALJ asked the VE to consider a hypothetical individual who is limited as follows: a forty-nine-year-old individual with Plaintiff's training, education and experience and who is able to lift a maximum of twenty pounds, stand and walk a total of six hours throughout an eight-hour workday and sit for six or more hours throughout an eight-hour workday. (R. at 34-35.) The VE opined that the hypothetical individual could perform Plaintiff's past work as an admitting clerk and each of the managerial positions. (R. at 35.) The ALJ also asked the VE to consider the same hypothetical individual, but who is limited to lifting up to ten pounds, and who could stand and walk only two hours in an eight-hour workday. Id. The VE opined that this hypothetical individual could perform Plaintiff's past work as defined in the DOT, but not as performed by Plaintiff because Plaintiff represented that, at times, she was required to lift files weighing up to fifty pounds. Id. The VE also opined, in the alternative, that the hypothetical individual could perform several types of unskilled work such as order clerk and document prep. (R. at 35-36.)

The ALJ's analysis of the subjective complaints, medical evidence, and medical opinions is in accordance with the Commissioner's regulations and Third Circuit case law. The

hypothetical questions posed to the VE accurately reflected all of Plaintiff's impairments that are supported by the record. See Burns, 312 F.3d at 123 (finding that the question posed to the VE must include impairments supported by "medically undisputed evidence" in the record). Therefore, the ALJ properly relied on the VE's responses in reaching his conclusions.

To the extent that Plaintiff is challenging the ALJ's RFC assessment, which is based in part on the testimony of the VE, such argument is unpersuasive. The ALJ fully accounted for Plaintiff's functional limitations in his RFC assessment by limiting Plaintiff to light work as set forth in his decision. "A diagnosis of fibromyalgia does not automatically render a person unable to perform jobs that exist in significant numbers in the national economy." Edelman v. Astrue, 2012 WL 1605102, at *4 (E.D. Pa. May 8, 2012) (citing Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 534 (1st Cir. 1988)). Courts in the Third Circuit have affirmed the denial of benefits to a person who suffered from fibromyalgia where the ALJ determined that the plaintiff retained the RFC to perform work. E.g., id. (finding that substantial evidence supported the ALJ's determination that the plaintiff was able to perform certain kinds of light work despite her impairments).

For these reasons, the Magistrate Judge was correct in concluding that that the ALJ's questions to the VE were legally sufficient. Therefore, Plaintiff's last Objection is without merit.

## V.    CONCLUSION

Plaintiff's objections to the R&R filed by Magistrate Judge Rueter will be overruled. The R&R (Doc. No. 14) will be approved and adopted in its entirety. An appropriate Order follows.